## N. AND H. WEED & CO. v. BROWN.

1. When a writ is properly sued out against the maker of a note, judgment obtained, and the statutory return of "no property found," made by the sheriff, it will be sufficient to charge the indorser, though it be shown, that the maker removed to another county after the institution of the suit. *Quere*, if the indorsee is informed of such removal, and that an execution would be more likely to be availing there, than if issued in the county in which the judgment was obtained, would it not be his duty to send it to such county.

2. A writ is properly sued out, so as to charge the indorser, although the maker removed from the county a few days previous to the institution of the suit; it not appearing, that such removal was open, visible, and notorious, or that the indorsee had knowledge of the fact; or that the maker was a freeholder of the county to which he removed, or was exempt from suit in the county in which he was sued.

Writ of Error to the Circuit Court of Talladega. Before the Hon. S. Chapman.

This was an action of assumpsit at the suit of the plaintiffs in error, as the indorsees of a promissory note made by John Long, James Long and Wm. F. Long, by which, on the 14th February, 1840, they promised to pay to the defendant, by the 25th December, 1841, the sum of $2,000. The indorsement by the defendant is alledged to have been made on the third day of November next after the date of the note.

The cause was tried upon the general issue, with leave to give any matter in evidence that could be pleaded in bar; a verdict was returned for the defendant, and judgment thereon rendered. From a bill of exceptions sealed at the instance of the plaintiffs, it appears to have been proved that at the time the note was made and indorsed, the makers all resided in Talladega county. Wm. F. Long left the State and died previous to the maturity of the note. John Long was in Tennessee when the note became due, and James Long was

57

in Talladega on that day, but left immediately after for that State; and returned with John on the 9th of January, 1842, more than five days before the circuit or county court of Talladega next after the maturity of the note. A writ was issued to the first term of the county court after the note fell due against the makers. The defendant frequently urged James Long to pay the note, saying he was bound to pay it, if witness and John did not, and a *fi. fa.* was returned "no property found."

Wm. F. Long resided in Talladega in November, 1840, and his estate, to the value of $1,500 or $1,600, was in that county during the years 1840, 1841 and 1842. James Long administered on Wm. F.'s estate in Talladega, and John Long was his administrator in Tennessee.

. James Long resided in Talladega up to the last of January, 1842, when he removed to Randolph county, where he remained until the last of January, 1844; he then returned to Talladega, and has resided there ever since. He administered on Wm. F. Long's estate shortly after the death of the latter—about September, 1841. The present suit was instituted in January, 1844.

The court charged the jury as follows: 1. To charge the defendant as indorser, the plaintiffs should show that they brought a suit against John and James Long, to the first court to which process could be made returnable after the maturity of the note, in the county of their residence; that although they believed James Long resided in Talladega when the note was made and became due, and may have continued to live there when the first writ issued against John and himself, yet if the first writ was discontinued as to James, on whom it was not executed, and afterwards, but before another writ issued against James returnable to the circuit court of Talladega, he became a resident of Randolph for the length of time shown by the evidence, then the plaintiffs should have sued him in the latter county to the first term of the court after his removal, or should have shown a return of "no property found" as to him, by the sheriff of Randolph.

2. If James Long became a citizen of Randolph after the note was indorsed by the defendant, it was immaterial whe-

ther the plaintiffs had notice of his removal or not.   3. If at the time James Long was sued in the circuit court of Talladega, when the return of "no property found" was made as to him by the sheriff of that county, he resided in Randolph, then that return was not made by the proper officer.

The plaintiffs prayed the court to charge the jury:   1. That if they believed James Long resided in Talladega at the time the first writ issued to the county court against John and himself, and afterwards removed to Randolph, but could have been sued in Talladega, and that a return of "no property found" was made as stated in the declaration, then, the plaintiffs were entitled to recover; unless it was shown that the plaintiffs, or their agent or attorney, had notice of his removal.   This charge was refused.

2. That if the jury should believe the plaintiffs have proved the allegations of their declaration, they were entitled to recover the balance of the note unpaid.   This charge was given with the following qualification, viz: "*Provided*, at the time the second writ issued against James Long, or at the time the return of 'no property found' as to said James was made, he resided in Talladega county."

3. That if they believed from the evidence the defendant had agreed to pay the note, or acknowledged his liability to do so, in the event it was not paid by the makers, and this acknowledgment was made pending suits against James and John Long respectively, the jury might infer the waiver of a suit against James in Randolph.   This charge was given with a qualification as follows, viz: "that if the jury believed from the evidence that said defendant agreed to dispense with the statutory requisition of suing the maker in the county of his residence, to the first court to which the action could be brought, that it was competent for him to do so, as the statute provided for a case like that.   To all the charges and refusals to charge, and qualifications of charges, the plaintiffs excepted.

The declaration alledges the recovery of a judgment against John Long alone in the suit instituted in January, 1842, in the county court of Talladega—which suit was discontinued as to James, on whom the process was not served: Further, that a suit was brought in February, 1842, in the

circuit court of Talladega, and judgment therein recovered against James Long. Upon both of which judgments writs of *fieri facias* were placed in the hands of the sheriff of Talladega, and returned "no property found." These facts, it is admitted, were proved as alledged, and that the judge of the county court of Talladega being interested in the suit brought in that court, the same was transferred to the circuit court.

J. T. MORGAN, for the plaintiffs in error. The interest of the judge of the county court of Talladega was explicitly shown by the record, and it was therefore allowable to sue in the circuit court. It was at least doubtful in which county James Long lived when he was sued in the circuit court; as the change of residence had taken place so secretly, if at all, that the plaintiffs' knowledge of the fact could not be assumed, it was not an immaterial inquiry, and should have been submitted to the jury. Clay's Dig. 383, § 15. It was a sufficient compliance with the statute, that the plaintiffs sued in the county but very recently known as the maker's residence; especially where it appears that he had been evading the service of the process in the county court.

The term "proper officer," as used in the statute, does not mean the sheriff of the county in which the maker of the note resides, but such an officer as was competent to execute the *fi. fa.* issuing on the judgment against him. There was no proof that James Long had any property in Randolph, but some was levied on and sold in Talladega.

The declaration of the defendant, that he was bound to pay the note if the makers did not, may not perhaps be conclusive to show that he dispensed with the requisition of the statute, to sue the makers, yet it should have been left to the jury, as a fact from which they might, if they thought proper, have inferred that he assented to the suit in Talladega. The consent of the indorser to delay a suit against the maker of a note need not be in writing. 7 Ala. Rep. 782; 9 Id. 570. He also cited 1 Ala. Rep. 423, 394; 2 Id. 736; 3 Id. 237; 4 Id. 394; 5 S. & Porter's Rep. 96; 2 Porter's Rep. 456.

S. F. Rice and L. E. Parsons, for the defendant in error. The suit against James Long, in the circuit court, and the return of "no property found," to the *fi. fa.* issued on the judgment therein rendered, was not a compliance with the statute. The note was made by three persons, and it is not enough to show that the statute was complied with as to one of them. Clay's Dig. 383, § 12–16; 4 Ala. 342; 5 Id. 286; 6 Id. 668.

James Long resided in Randolph county, and the return of "no property found," by the sheriff of Talladega, is not a compliance with the statute. It was the duty of the plaintiff to have inquired and ascertained his removal, and the charge upon this point was not prejudicial. 8 Ala. Rep. 73, 650, 889, 942. See 2 Ala. Rep. 736. What was said in Brown & Dimmock v. Bates, 10 Ala. Rep. 440, as to the county to which execution shall issue, does not apply in a case like the present.

COLLIER, C. J.—The act of 1828, defining the liability of indorsers, and the act amendatory thereof, enacts, that all contracts in writing, for the payment of money, or property, &c., shall be assignable, as previously they were: *Further*, that on all securities not subject to the rules of the law merchant, the assignee shall cause suit to be brought to the first court of the county where the maker resides, to which the writ can properly be made returnable; "and if he shall fail to sue the maker to the first court as herein provided for, the indorser shall be discharged from liability, unless suit shall be delayed by his consent. Again: " When judgments shall be recovered in either the circuit or county courts, or before a justice of the peace, by the assignee or indorsee of any assigned or indorsed bond, note, or other writing, and a writ of *fieri facias* shall be returned by the proper officer "no property found," the said assignee or indorsee may commence his action against the assignor or indorser, on said assignment or indorsement, and the return on said *fieri facias* shall be sufficient evidence of the insolvency of the maker or obligor, to authorize a recovery against him, on his said assignment or indorsement." Clay's Dig. 383, § 12 to 16.

Where the security indorsed is not subject to the rules of

the law merchant, the obvious design of the statute was to simplify the remedy against indorsers, and to substitute for demand and notice, a speedy pursuit of the maker to judgment, and a return by the sheriff of "no property found," which latter is made evidence of the inability of the primary debtor to pay.

In Pearson v. Mitchell, 2 Ala. Rep. 736, the action was brought to the county court, being the one first holden, and the writ was returned *not found;* thereupon the plaintiff dismissed his suit, and commenced anew to the next circuit court : *Held,* that the second suit was regularly instituted, as it would stand for judgment sooner than if an *alias* writ had been issued from the county court.

It appears in the case before us, that James Long resided in Talladega, when the sheriff of that county held the writ which was returnable to the county court; there can therefore be no question, but that suit was commenced in due season, and of the right of the plaintiff to dismiss it as to him on whom the process was not served. But the question is, in what county should the second writ have issued. The suit against James Long was instituted on the 3d February, 1842, at most but three or four days *after his removal to* Randolph. There is no proof that his change of residence was open, visible, or notorious, or even known to the plaintiff; and there is nothing in the record to indicate that he was a freeholder in Randolph, or that he was otherwise exempt from liability to suit in Talladega. The fact that the judgment was rendered against him, is perhaps conclusive, that he was suable in Talladega.

The suit against John Long was transferred to the circuit court, in consequence of the probable interest of the judge of the county court, and judgment was rendered therein on the 31st May, 1843—a judgment having been recovered against James Long two days previously. Thus we see that the plaintiffs obtained a judgment against both the defendants quite as soon as if the service of the writ first issued had been perfected to the term to which it was returnable; and the judgment against James Long was not delayed by suing him to the circuit court.

If then, the suit against James Long was regularly instituted in the circuit court of Talladega, the plaintiffs were not bound to take notice of his removal to Randolph, and cause a *fieri facias* to be placed in the hands of the sheriff of that county.   If they had been informed of it, and that an execution would there be likely to be more availing than if issued to the latter county, perhaps it would have been their duty to have had it issued there.   But they are not charged with such a duty in the absence of any information on the subject; and it cannot be assumed from the proof set out in the record that the return of " no property found," was not made by the " proper officer."

This view may suffice to show the error in the ruling of the circuit court.   The other questions raised will hardly present themselves on a future trial: if they do, a slight attention to very plain principles will prevent a misapprehension of the law.   We have but to add, that the judgment is reversed, and the cause remanded.